UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL AZZARA, | : | CIVIL ACTION NO. 4:CV-11-1363 |
| | : | |
| Petitioner | : | (Judge Nealon) |
| | : | |
| v. | : | |
| | : | **FILED** |
| R. MARTINEZ, | : | **SCRANTON** |
| | : | MAY 2 3 2014 |
| Respondent | : | |

PER _____ DEPUTY CLERK

**MEMORANDUM**

Paul Azzara, an inmate formerly confined in the Canaan United States

Penitentiary ("USP-Canaan"), Waymart, Pennsylvania,[1] filed the above captioned

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner claims

that his due process rights were violated during the course of twelve (12) separate

prison disciplinary hearings held at USP-Canaan. (Doc. 1, petition). Specifically,

Petitioner claims that beginning on December 3, 2008, "false incident/misconduct

reports began being generated by the very special investigations ("SIS") staff

members who attempted to prosecute Azzara" for a threatening letter he penned but

never mailed.[2] Id. For relief, Petitioner seeks the expungement of the incident

---

[1]Petitioner is currently housed in the United States Penitentiary, Coleman, Florida.

[2]Azzara states that the letter, which was found during a cell shakedown on April 17, 2007, was turned over the FBI, who "over a year and a half later...declined prosecution due to the fact that this writing was never conveyed to the subject of that

reports and sanctions, and restoration of his forfeited good conduct time. Id. The

petition is ripe for disposition and, for the reasons that follow, will be denied.

## I.      Background

On November 24, 2003, Azzara was sentenced in the United States District

Court for the Southern District of New York to a 168-month sentence for mailing

threatening communication and attempted interference with commerce by threats of

violence. (Doc. 12-1 at 8, Inmate Data). His projected release date is January 25,

2016, via good conduct time. Id.

Azzara challenges twelve (12) separate incident reports. The record

evidence demonstrates the following with respect to Azzara's exhaustion efforts as

to each misconduct.

### Incident Report No. 1806795

On December 3, 2008, Petitioner was served with Incident Report No.

1806795 charging him with Threatening Another with Bodily Harm or Any Other

Offense, a Code 203(A) violation. (Doc. 12-1 at 24, Incident Report).

On January 8, 2009, Petitioner was found guilty of the charge by the

Discipline Hearing ("DHO"). Id. at 20, Discipline Hearing Officer Report. On

writing or to any third party and due to the fact that there was no similar subsequent
conduct by Azzara." Id.

2

February 26, 2009, Petitioner filed a Regional Administrative Remedy Appeal, (Doc. 23-8 at 2), which was denied on April 3, 2009. Id. at 4.

On April 28, 2009, Petitioner filed a Central Office Remedy Appeal, (Doc. 23-10 at 2), which was denied on July 29, 2009. Id. at 4.

### Incident Report No. 1885508

On June 26, 2009, Petitioner was served with Incident Report No. 1885508 charging him with Refusing an Order, a Code 307 violation. (Doc. 12-1 at 38, Incident Report).

On July 30, 2009, Petitioner was found guilty of the charge by the Discipline Hearing (DHO). Id. at 33, Discipline Hearing Officer Report. On December 6, 2009, Petitioner filed a Regional Administrative Remedy Appeal, (Doc. 24 at 7), which was denied on June 30, 2010. Id. at 9-10.

On July 14, 2010, Petitioner filed a Central Office Remedy Appeal, (Doc. 24 at 4), which was denied on January 14, 2011. Id. at 5.

### Incident Report No. 1885512

On June 26, 2009, Petitioner was served with Incident Report No. 1885512 charging him with Threatening Staff, a Code 203 violation. (Doc. 12-1 at 50, Incident Report).

On July 30, 2009, Petitioner was found guilty of the charge by the

3

Discipline Hearing (DHO). Id. at 45, Discipline Hearing Officer Report. On December 6, 2009, Petitioner filed a Regional Administrative Remedy Appeal, (Doc. 24 at 26), which was denied on June 30, 2010. Id. at 28-29.

On July 14, 2010, Petitioner filed a Central Office Remedy Appeal, (Doc. 24 at 23), which was denied on January 21, 2011. Id. at 24.

### Incident Report No. 1885368

On June 25, 2009, Petitioner was served with Incident Report No. 1885368 charging him with Destroying, Altering, or Damaging Government Property, or the Property of Another Person having a Value in Excess of $100.00 or Destroying, Altering, Damaging Live-Safety Devices (e.g. fire alarm) Regardless of Financial Value and Assaulting any Person, violations of Codes 218 and 224. (Doc. 25 at 3-5 Discipline Hearing Officer Report).

On May 12, 2011, Petitioner was found guilty of the charge by the Discipline Hearing (DHO). Id. On September 29, 2011, Petitioner filed a Central Office Administrative Remedy Appeal, (Doc. 25 at 6), which was rejected on October 27, 2011, by the Administrative Remedy Coordinator , because "there is no record [Petitioner] appealed the DHO hearing for incident report #1885368." (Doc. 25 at 7, Rejection Notice). Petitioner was further advised that he may submit an appeal to the region for review, and resubmit his appeal in the proper form within

4

fifteen (15) days of the date of the rejection notice.  Id.

November 9, 2011, Petitioner filed a Regional Administrative Remedy Appeal, (Doc. 25 at 8), which was rejected on November 29, 2011, indicating that it was "untimely" and offering Petitioner ten (10) days within which to resubmit his appeal and "provide staff verification for being untimely."  See (Doc. 25 at 9, Rejection Notice).  No further action was taken on this Administrative Remedy.

### Incident Report No. 1885366

On June 25, 2009, Petitioner was served with Incident Report No. 1885366 charging him with Refusing to Obey an Order of Any Staff Member, Assaulting Any Person, Interfering with a Staff Member in the Performance of Duties, Conduct Which Disrupts or Interferes with the Security or Orderly Running of the Institution or the Bureau of Prisons, violations of Codes 307, 101, 298 and 299.  (Doc. 25 at 10-12 Discipline Hearing Officer Report).

On May 12, 2011, Petitioner was found guilty of the charge by the Discipline Hearing (DHO).  Id.  On September 29, 2011, Petitioner filed a Central Office Administrative Remedy Appeal, (Doc. 25 at 13), which was rejected on October 27, 2011, by the Administrative Remedy Coordinator , because "there is no record [Petitioner] appealed the DHO hearing for incident report #1885366." (Doc. 25 at 14, Rejection Notice).  Petitioner was further advised that he may submit an

appeal to the region for review, and resubmit his appeal in the proper form within fifteen (15) days of the date of the rejection notice. Id.

On November 9, 2011, Petitioner filed a Regional Administrative Remedy Appeal, (Doc. 25 at 15), which was rejected on November 29, 2011, indicating that it was "untimely" and offering Petitioner ten (10) days within which to resubmit his appeal and "provide staff verification for being untimely." (See Doc. 25 at 16, Rejection Notice). No further action was taken on this Administrative Remedy.

**Incident Report No. 1916840**

On September 11, 2009, Petitioner was served with Incident Report No. 1916840 charging him with Refusing to Obey an Order of any Staff Member, a Code 307 violation. (Doc. 12-1 at 68, Incident Report).

On October 1, 2009, Petitioner was found guilty of the charge by the Discipline Hearing (DHO). Id. at 63, Discipline Hearing Officer Report. On October 13, 2009, Petitioner filed a Regional Administrative Remedy Appeal, (Doc. 26 at 6), which was denied on November 13, 2009. Id. at 5.

On November 29, 2009, Petitioner filed a Central Office Remedy Appeal, (id. at 4), which was denied on April 9, 2010. Id. at 3.

**Incident Report No. 2023417**

On June 17, 2010, Petitioner was found guilty of Incident Report No.

6

2023417, issued for Refusing to Obey an Order of Any Staff Member, a code 307 violation. (Doc. 28-1 at 4, Regional Director Response).

On July 5, 2010, Petitioner filed a Regional Administrative Remedy Appeal, (Doc. 28-1 at 6), which was denied on August 10, 2010. (Doc. 28-1 at 4, Regional Director Response).

On September 5, 2010, Petitioner filed a Central Office Administrative Remedy Appeal, (Doc. 28-1 at 8), which was rejected on January 12, 2011, by the Administrative Remedy Coordinator as "untimely", because it was received in their office on December 15, 2010, which exceeded the allotted thirty (30) days from the Regional Directors' Response. (Doc. 28-1 at 7, Rejection Notice). Petitioner was permitted to resubmit his grievance within fifteen (15) days and "provide documentation from staff on letterhead, stating the late filing was not [Petitioner's] fault." Id. No further action was taken on this Administrative Remedy.

### Incident Report No. 2023679

On June 17, 2010, Petitioner was found guilty of Incident Report No. 2023679, issued for Refusing to Obey an Order of Any Staff Member, a code 307 violation. (Doc. 28-2 at 2, Regional Director Response).

On July 5, 2010, Petitioner filed a Regional Administrative Remedy Appeal, (Doc. 28-2 at 4), which was denied on August 10, 2010. (Doc. 28-2 at 2,

Regional Director Response).

On September 5, 2010, Petitioner filed a Central Office Administrative Remedy Appeal, (Doc. 28-2 at 6), which was rejected on January 13, 2011, by the Administrative Remedy Coordinator as "untimely", because it was received in their office on December 15, 2010, which exceeded the allotted thirty (30) days from the Regional Directors' Response. (Doc. 28-2 at 5, Rejection Notice). Petitioner was permitted to resubmit his grievance within fifteen (15) days and "provide staff verification on BOP letterhead documenting that the untimely filing of this appeal was not [Petitioner's] fault." Id. No further action was taken on this Administrative Remedy.

**Incident Report No. 2029550**

On July 8, 2010, Petitioner was found guilty of Incident Report No. 2029550, issued for Assault, a code 224 violation. (Doc. 28-3 at 4, Regional Director Response).

On July 20, 2010, Petitioner filed a Regional Administrative Remedy Appeal, (Doc. 28-3 at 5), which was denied on September 17, 2010. (Doc. 28-3 at 4, Regional Director Response).

Petitioner filed a Central Office Administrative Remedy Appeal, (Doc. 28-3 at 3). Although the Central Office Administrative Remedy Appeal does not

contain a date of submission, it was received by the Administrative Remedy Section on December 20, 2010. Id. Petitioner's Central Office Appeal was rejected on January 13, 2011, by the Administrative Remedy Coordinator as "untimely", because it was received in their office on December 20, 2010, which exceeded the allotted thirty (30) days from the Regional Directors' Response. (Doc. 28-3 at 2, Rejection Notice). Petitioner was permitted to resubmit his grievance within fifteen (15) days and "provide documentation from staff on letterhead, stating the late filing was not [Petitioner's] fault." Id. No further action was taken on this Administrative Remedy.

### Incident Report No. 2029763

On July 1, 2010, Petitioner was found guilty of Incident Report No. 2029763, issued for Insolence Toward a Staff Member, a code 312 violation. (Doc. 28-4 at 2, Regional Director Response).

On July 5, 2010, Petitioner filed a Regional Administrative Remedy Appeal, (Doc. 28-4 at 3), which was denied on September 17, 2010. (Doc. 28-4 at 2, Regional Director Response).

On October 1, 2010, Petitioner filed a Central Office Administrative Remedy Appeal, (Doc. 28-4 at 5), which was rejected on January 19, 2011, by the Administrative Remedy Coordinator as "untimely", because it was received in their

office on December 27, 2010, which exceeded the allotted thirty (30) days from the Regional Directors' Response. (Doc. 28-4 at 4, Rejection Notice). Petitioner was permitted to resubmit his grievance within fifteen (15) days and "provide documentation from staff on letterhead, stating the late filing was not [Petitioner's] fault." Id. No further action was taken on this Administrative Remedy.

### Incident Report No. 2030338

On July 1, 2010, Petitioner was found guilty of Incident Report No. 2030338, issued for Refusing an Order, a code 307 violation. (Doc. 28-5 at 2, Regional Director Response).

On July 10, 2010, Petitioner filed a Regional Administrative Remedy Appeal, (Doc. 28-5 at 3), which was denied on September 17, 2010. (Doc. 28-5 at 2, Regional Director Response).

On October 12, 2010, Petitioner filed a Central Office Administrative Remedy Appeal, (Doc. 28-5 at 5), which was rejected on January 7, 2011, by the Administrative Remedy Coordinator as "untimely", because it was received in their office on December 6, 2010, which exceeded the allotted thirty (30) days from the Regional Directors' Response. (Doc. 28-5 at 4, Rejection Notice). Petitioner was permitted to resubmit his grievance within fifteen (15) days and "provide documentation from staff on letterhead, stating the late filing was not [Petitioner's]

fault." Id. No further action was taken on this Administrative Remedy.

### Incident Report No. 2029826

On July 1, 2010, Petitioner was found guilty of Incident Report No.
2029826, issued for Refusing an Order, a code 307 violation. (Doc. 28-6 at 2,
Regional Director Response).

On July 15, 2010, Petitioner filed a Regional Administrative Remedy
Appeal, (Doc. 28-6 at 3), which was denied on September 17, 2010. (Doc. 28-6 at
2, Regional Director Response).

Petitioner filed a Central Office Administrative Remedy Appeal, (Doc. 28-
6 at 5). Although the Central Office Administrative Remedy Appeal does not
contain a date of submission, it was received by the Administrative Remedy Section
on December 6, 2010. Id. Petitioner's Central Office Appeal was rejected on
January 7, 2011, by the Administrative Remedy Coordinator as "untimely", because
it was received in their office on December 20, 2010, which exceeded the allotted
thirty (30) days from the Regional Directors' Response. (Doc. 28-6 at 4, Rejection
Notice). It was also rejected because Petitioner failed to provide a copy of the
DHO Report he wished to appeal, or identify the charges and date of the DHO
action. Id. Petitioner was permitted to resubmit his grievance within fifteen (15)
days and "provide documentation from staff on letterhead, stating the late filing

11

was not [Petitioner's] fault." Id. No further action was taken on this Administrative Remedy.

## II.     Discussion

### A.     Exhaustion

The BOP's Administrative Remedy Program is a three-tier process available to inmates confined in institutions operated by the BOP who "seek formal review of an issue relating to any aspect of his/her confinement." 28 C.F.R. § 542.10(a). An inmate must generally attempt to informally resolve the issue by presenting it to staff in a BP-8 form. See 28 C.F.R. § 542.13. If the issue is not informally resolved, then the inmate may submit a request for administrative remedy (BP-9) to the Warden. See 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response may appeal to the Regional Director (BP-10), and an inmate dissatisfied with the Regional Director's decision may appeal to the General Counsel in the Central Office (BP-11). See 28 C.F.R. § 542.15(a). Appeal to the General Counsel is the final administrative appeal. Id. The regulations further provide that the Warden shall respond within twenty (20) calendar days; the Regional Director shall respond within thirty (30) calendar days; and the General Counsel shall respond within forty (40) calendar days. See 28 C.F.R. § 542.18. Finally, the regulations provide that if the inmate does not receive

12

a response within the time allotted for reply, then the inmate may consider the absence of a response to be a denial at that level. Id.

Although 28 U.S.C. § 2241 contains no exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." Gambino v. Morris, 134 F.3d 156, 171 (3d Cir.1998); see also, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981). The United States Court of Appeals for the Third Circuit requires administrative exhaustion of a claim raised under § 2241 for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988).

While the record demonstrates that Azzara began the administrative remedy process with respect to the twelve (12) incident reports he seeks to challenge, it is clear that he has properly exhausted only four (4) of the twelve (12) incident reports challenged. With respect to the remaining eight (8) incident

reports, the record demonstrates that they were rejected at either the Regional or Central Administrative Remedy level, with advisement that Petitioner could resubmit his appeals, once he complied with the directives contained therein. Petitioner, however, failed to comply, stopping the appeal process before completion and failing to appeal to the BOP General Counsel for final administrative review.  As such, he failed to exhaust the administrative remedy process.

Azzara concedes that he did not exhaust his administrative remedies.  (Doc. 30, affidavit in opposition to Respondent's defense of failure to exhaust).  If a federal prisoner is not in compliance with § 542.10 then the habeas petition should be denied.  Arias v. U.S. Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981). However, under limited circumstances, a prisoner may not be required to exhaust the administrative remedies.  A prisoner's failure to exhaust may be excused if he can show that there is no opportunity to obtain adequate redress, or that the issue the prisoner presents only pertains to statutory construction, if the prisoner can affirmatively show that the pursuit of the administrative remedy would be futile. Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998); Schandelmeier v. Cunningham, 819 F.2d 52, 53 (3d Cir. 1986); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981).  Petitioner here has not shown that his situation meets the

above-mentioned exceptions.

To the extent that Azzara argues that he "attempted to 'properly' exhaust administrative remedies to all claims but was unable due to government interference, not to any fault of [his] own", (Doc. 30, affidavit in opposition to Respondent's defense of failure to exhaust), Petitioner fails to submit any evidence in support of this conclusory allegation. Petitioner was adequately instructed what was required of him to further pursue his remedies, and he simply failed to comply, or could not meet the requirements. Thus, Petitioner is not entitled to be excused from exhaustion in this matter. Accordingly, only the merits of the four (4) incident reports which have been properly exhausted will be addressed.

### B.   Merits

### Incident Report No. 1806795

On December 3, 2008, Petitioner was served with Incident Report No. 1806795 charging him with Threatening Another with Bodily Harm or Any Other Offense, a Code 203(A) violation. (Doc. 12-1 at 24, Incident Report). The incident report, which was written by J. Lyons, SIS Lieutenant, reads as follows:

> As a result of an SIS investigation which concluded on December 3, 2008, at approximately 8:30 am, inmate AZZARA, Paul (83640-054), is being charged with code 203(A). Specifically, on April 19, 2007, a typed letter containing a threat towards Honorable Colleen McMahan & her family members was recovered in the

15

> personal property of AZZARA.  SIS staff discovered the letter
> dated February 14, 2007, during a routine mass shakedown of Unit
> 3-A.  The letter signed by AZZARA contained several threats,
> "You want to kidnap me you incompetent Mick Whore, I'll teach
> you a lesson you'll never forget.  Watch what I do cunt." and "This
> letter is a threat and I will be retaliating against the cunt's children,
> but no threat of violence was made."  During an SIS interview on
> August 5, 2008, AZZARA admitted the signature on the letter
> appeared to be his.  He said he did not recall typing the letter, then
> stated he didn't mail the letter.

Id.  On December 8, 2008, Petitioner appeared before the Unit Discipline

Committee ("UDC").  See id., Committee Action.  Based on the severity of the

prohibited act, the UDC referred the charge to the DHO for final disposition.  Id.

During the UDC hearing, staff member, K. Dewey, informed Azzara of his rights at

the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline

Hearing" form.  Id. at 26, Inmate Rights at Discipline Hearing.

   Also on December 8, 2008, Azzara was provided with a "Notice of

Discipline Hearing before the (DHO)" form.  Id. at 29.  Azzara requested to have a

staff member represent him and did not wish to call witnesses.  Id.

   On January 08, 2009, Petitioner appeared for a hearing before DHO, K.

Bittenbender.  Id. at 20-23, DHO Report.  During the DHO hearing, Petitioner was

again read his rights, and he indicated that he understood them.  Id.  The DHO

confirmed that Azzara received a copy of the incident report, and that a staff

representative was appointed to represent Petitioner. Id.

The following statement was offered on Azzara's behalf:

> Staff Representative: Inmate AZZARA initially attempted to select
> Mr. McCluskey, Attorney, to be his Staff Representative. Due to a
> conflict of interests, Mr. McCluskey could not be assigned as Staff
> Representative. Inmate AZZARA then requested Mr. Lavella
> through his counselor, however, Mr. Lavella would not be present
> on the day of the scheduled DHO Hearing. AZZARA had a
> reasonable amount of time to select a staff representative and was
> advised to the time/date of the scheduled DHO Hearing. Attempts
> to proceed with a Staff Representative (Lavella) on 07Jan09 were
> met with resistance from Inmate AZZARA. Inmate AZZARA was
> advised the Warden would appoint a staff representative if he
> could not select one. Inmate AZZARA was appointed Dr. Bonner
> as his staff representative. Inmate AZZARA declined to sign BP-
> 294. This decline was witnessed by Officer Arnold (Noted on BP-
> 294). Staff Representative, Dr. Bonner noted no discrepancies in
> the discipline process. Additionally, he stated Azzara indicated to
> him that he didn't write the letter and no threat of bodily harm was
> indicated. Dr. Bonner indicated he has always observed AZZARA
> to be polite towards staff members during mainline operations.

Id.

Petitioner raised no procedural issues and offered the following statement

on his behalf:

> At the onset of this hearing, Azzara was advised of his Rights
> before the DHO, indicated he understood them (waived witness
> testimony) and chose to provide the following statement:
> AZZARA stated, "I won't comment on whether I wrote the letter
> or not although it looks like my signature." AZZARA stated, "The
> letter was never mailed so the threat was never conveyed as a
> threat so because it wasn't communicated, the incident report
> should be expunged." AZZARA stated, "I never said anything to

any other inmate about the judge." AZZARA stated, "I never said anything to my old cell mate or any other inmate; I do take medication for bipolar." AZZARA concluded, "I will see you in court, I am going to sue you." AZZARA declined to may any further statement.

Id.

In addition to the Incident Report and Investigation, the documentary evidence which the DHO considered in making his determination included: (1) Memoranda dated August 25, 2008, from J. Lyons, SIS Lieutenant; (2) Memorandum dated December 3, 2008 from Lt. Lyons; (3) Typed correspondence dated February 14, 2007, from AZZARA; (4) Typed correspondence dated December 4, 2008, from AZZARA to Unit 3A Unit Team; (5) Photocopied request to staff member from AZZARA, dated November 11, 2008, and (6) Typed correspondence to Counselor C. Moser, dated January 11, 2008. Id. The specific evidence taken from the relied upon documentary evidence was as follows:

During this discipline hearing regarding AZZARA, Paul, Register No. 83640-054, for the charge of Threatening Another With Bodily Harm or Any Other Offense, Code 203(A), the following information was evidentiary and documented by the DHO in his findings.

AZZARA's involvement in the incident as noted in Section 11 of Incident Report 1806795, as provided by J. Lyons, SIS Lieutenant, was viewed as inculpatory in this case. Paraphrased, J. Lyons writes: As a result of an SIS investigation which concluded on December 3, 2008, at or about 8:30 a.m., inmate AZZARA, Paul

(83640-054), is being charged with code 203(A).  Specifically, on
April 19, 2007, a typed letter containing a threat towards
Honorable Colleen McMahan and her family members was
recovered in the personal property of AZZARA.  SIS staff
discovered the letter dated February 14, 2007, during a routine
mass shakedown of Unit 3A.  The letter signed by inmate
AZZARA contained several threats, "You want to kidnap me you
incompetent Mick Whore.  I'll teach you a lesson you'll never
forget.  Watch what I do cunt." and "This letter is a threat and I
will be retaliating against the cunt's children, but no threat of
violence was made."  During an SIS interview on August 5, 2008,
AZZARA admitted the signature on the letter appeared to be his.
He said he did not recall typing the letter, then stated he didn't mail
the letter.

Inculpatory evidence in the form of the typed letter signed by
AZZARA dated 2/14/07, corroborated the evidence cited in the
incident report in this case.  The letter supports the body of the
report pertaining to its content.  The letter clearly possesses the
hostile tonality of being threatening.  Specifically, the letter states:
"I'll teach you a lesson you'll never forget.  Watch what I can do
cunt."  Also in the letter, AZZARA indicates the letter is meant to
be a threat.

Inculpatory evidence in the form of a memorandum from Lt. Lyons
dated August 25, 2008 corroborated the evidence cited in this
report.  Lt. Lyons indicated during the interview on August 5,
2008, AZZARA indicated he wasn't denying typing the letter but
that he did not recall typing the letter.  AZZARA stated he has
written letters and has made rude comments and called her names,
but that he had not threatened her.  He also admitted in the past he
was seeking the home address of the judge in order to have papers
served on her.  When asked why he wouldn't simply send the
papers to the judge's court address, AZZARA had no response.
AZZARA stated, "I would not want to comment on if there is or is
not a threat contained in the letter, I just don't recall writing that

letter."

Inculpatory evidence in the form of a memorandum from Lt. Lyons dated 12/3/08 corroborated the evidence cited in this report. Lt. Lyons indicated Inmates BUBUTIEVSKI and LOSSOWSKI had concerns about AZZARA. Both inmates stated that AZZARA was obsessed with his intent to cause harm to the judge. AZZARA was seeking inmates with ties to organized crime or people who had the ability to do something to the judge on the street. AZZARA would sit in his cell ranting verbal threats to the effect of, "I'll smash her face with a hammer."

The DHO believed the information provided by the staff members involved in this case, as they derived no known benefit by providing false information and by virtue of their position, are obligated to be truthful. The DHO finds the charge to be substantiated. The offense – code 203A (Attempt) to Threaten Another With Bodily Harm or <u>Other Offense</u> is clearly interpreted throughout the SIS Investigation and in the body of the inmate's written correspondence to the Federal Judge. The threatening letter was not mailed and discovered by staff, thus supporting the attempt to threaten. Even though the letter was not mailed, his statements are interpreted as being an intention to hurt or punish the judge based on her sentencing of AZZARA. In addition, two of AZZARA's associates also support AZZARA's intent to do physical harm to the judge by seeking out alternative methods to follow through with his intentions. These sources were disclosed to the inmates during the DHO hearing.

Upon questioning by the DHO, AZZARA neither admitted nor denied the charge. He elaborated upon his guilty plea by stating, he did not wish to comment on whether he wrote the letter or not.

After the consideration of evidence listed in Section V of this hearing report and documented above, the DHO has drawn the conclusion the greater weight of the evidence / some facts, listed in

20

paragraphs two through five above, support(s) the finding
AZZARA, Paul, Register No. 83640-054, committed the
prohibited act of Threatening Another With Bodily Harm or Any
Other Offense, Code 203(A), on February 14, 2007, at FCI
Allenwood, PA.

Id. The DHO sanctioned Petitioner to disallowance of twenty-seven (27) days good

conduct time; thirty (30) days disciplinary segregation; forfeiture of sixty (60) days

Non Vested Good Conduct Time; two (2) years loss of phone and visitation

privileges; an eighteen (18) month loss of commissary privileges; and a disciplinary

transfer. Id. The DHO documented his reasons for the sanctions given as follows:

> AZZARA's threatening statement directed at a Federal Judge and
> her family shows a great deal of disrespect for authority. His
> behavior hampers the ability of the recipient of the threat to
> perform her duties in an appropriate manner. Further, to verbally
> threaten another possibly indicates a propensity for violent acts.
> Accordingly, Disciplinary Segregation, the Disallowance of Good
> Conduct Time and the Forfeiture of Non Vested Good Conduct
> Time is sanctioned to punish AZZARA for his behavior, while the
> Loss of Privileges (Phone, Visit and Commissary) is sanctioned in
> an effort to deter him from this in the future.

> The DHO is recommending a Disciplinary Transfer to meet
> AZZARA's greater needs for supervision as well as to an
> institution commensurate to his security needs.

Id. Azzara was advised of his appeal rights at the conclusion of the hearing. Id.

### Incident Report No. 1885508

On June 26, 2009, Petitioner was served with Incident Report No. 1885508

21

charging him with Refusing to Obey an Order, a Code 307 violation. (Doc. 12-1 at

38, Incident Report). The incident report, which was written by R. Womeldorf,

Lieutenant, reads as follows:

> On the above date and time, this reporter was attempting to
> perform a routine pat search on AZZARA, P., #83640-054, due to
> him saying he had contraband in his sock. AZZARA had stated,
> "What I have in my sock, I'll eat in my Fucking cell!" He was then
> ordered stop stated, which he did not comply and exited the dining
> hall. AZZARA walked in the middle of the main compound where
> he was confronted by staff, and stopped at that time.

Id. On June 30, 2009, Petitioner appeared before the UDC. See id., Committee

Action. Based on the severity of the prohibited act, the UDC referred the charge to

the DHO for final disposition, recommending fifteen (15) days Disciplinary

Segregation and thirteen (13) days disallowance of Good Conduct Time. Id.

During the UDC hearing, staff member, C. Moser, informed Azzara of his rights at

the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline

Hearing" form. Id. at 42, Inmate Rights at Discipline Hearing.

Also on June 30, 2009, Azzara was provided with a "Notice of Discipline

Hearing before the (DHO)" form. Id. at 41. Azzara requested to have a staff

member represent him and did not wish to call witnesses. Id.

On July 30, 2009, Petitioner appeared for a hearing before DHO, K.

Bittenbender. Id. at 33-35, DHO Report. During the DHO hearing, Petitioner was again read his rights, and he indicated that he understood them. Id. The DHO confirmed that Azzara received a copy of the incident report, and that a staff representative was appointed to represent Petitioner. Id.

The following statement was offered on Azzara's behalf:

> Staff Representative: Inmate AZZARA initially selected Ms. Nicklin as his Staff Representative, however, Ms. Nicklin was the Acting Warden and reviewing CEO of this incident involving AZZARA. This conflict of interest prevented Ms. Nicklin from being AZZARA's staff representative. AZZARA was given an opportunity to select another staff representative or have the Warden appoint a staff representative. AZZARA indicated he didn't know who to select. Acting Warden, Mr. Clemons, selected Mr. Blanton as AZZARA's staff representative. Mr. Blanton noted no discrepancies in the discipline process. AZZARA refused to appear before the DHO for his hearing and Mr. Blanton remained present throughout the hearing with AZZARA absent. AZZARA's refusal to appear before the DHO was documented.

Id.

No procedural issues were cited, and no documentary evidence was provided for consideration. Id.

The specific evidence taken relied upon was as follows:

> During this discipline hearing regarding AZZARA, Paul, Register No. 83640-054, for the charge of Refusing an Order, Code(s) 307, the following information was evidentiary and documented by the DHO in his findings.

23

AZZARA's involvement in the incident as noted in Section 11 of Incident Report 1885508, as provided by R. Womeldorf, Lieutenant, was viewed as inculpatory in this case. Paraphrased, R. Womeldorf writes: On the above date and time, this reporter was attempting to perform a routine pat search on AZZARA, P., #83640-054, due to him saying he had contraband in his sock. AZZARA had stated, "What I have in my sock, I'll eat in my Fucking cell!" He was then ordered stop stated, which he did not comply and exited the dining hall. AZZARA walked in the middle of the main compound where he was confronted by staff, and stopped at that time.

The DHO believed the information provided by the staff members involved in this case, as they derived no known benefit by providing false information. The DHO finds the charge to be substantiated based on the greater weight of evidence and the inmate's refusal of an order by a staff member.

Upon questioning by the DHO, AZZARA, Registration #83640-054 neither admitted nor denied the charge. He refused to appear before the DHO and no statement was made.

After the consideration of evidence listed in Sections III and V of this hearing report and documented above, the DHO has drawn the conclusion the greater weight of the evidence / some facts, listed in paragraph two above, support(s) the finding Inmate AZZARA, Register No. 83640-054, committed the prohibited act of Refusing an Order, Code 307, on 06/26/2009, at or about 11:37 am, in the Main Compound, Metal Detector Building sidewalk, FCI Allenwood, PA.

Id. The DHO sanctioned Petitioner to disallowance of thirteen (13) days good conduct time; fifteen (15) days disciplinary segregation; forfeiture of twenty-nine (29) days Non Vested Good Conduct Time; one (1) year loss of TRULINCS

24

privileges; and a six (6) month loss of commissary privileges. Id. The DHO

documented his reasons for the sanctions given as follows:

> AZZARA's refusal to obey the order of a staff member limited the
> ability of that staff member to effectively perform their routine
> duties. To allow inmates to engage in this type of behavior would
> create chaos and will not be tolerated in a correctional setting.
> Accordingly, Disciplinary Segregation, the Disallowance of Good
> Conduct Time and the Forfeiture of Non Vested Good Conduct
> Time is sanctioned to punish AZZARA for his misconduct while
> the Loss of Privileges (TRULINCS Restriction and Commissary) is
> sanctioned in an effort to deter him from this behavior in the
> future.

Id. Azzara  was advised of his appeal rights at the conclusion of the hearing. Id.

### Incident Report No. 1885512

On June 26, 2009, Petitioner was served with Incident Report No. 1885512

charging him with Threatening Staff, a Code 203 violation. (Doc. 12-1 at 50,

Incident Report).  The incident report, which was written by R. Womeldorf,

Lieutenant, reads as follows:

> On the above date and time, this reporter was attempting to assist
> staff restraining inmate AZZARA, P., #83640-054, due to him
> becoming combative and noncompliant to staff orders.  While
> standing near AZZARA he looked at this reporter and stated "Fuck
> You Womeldorf, you know I hate you, and I'm not going to be in
> prison forever, I'll fucking kill you." He then stated, "you think
> you are so smart, I'm going to get you, you'll fucking see." He
> stated this in the presence of Ms. Geona Fausey Health Services
> Tech., Mr. Laino, HSA, Officer J. Dewald, Officer R. Arnold.

25

Id. On June 30, 2009, Petitioner appeared before the UDC. See id., Committee Action. Based on the severity of the prohibited act, the UDC referred the charge to the DHO for final disposition, recommending thirty (30) days Disciplinary Segregation, twenty-seven (27) days disallowance of Good Conduct Time, six (6) month loss of visitation, and a disciplinary transfer. Id. During the UDC hearing, staff member, C. Moser, informed Azzara of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. Id. at 59, Inmate Rights at Discipline Hearing.

Also on June 30, 2009, Azzara was provided with a "Notice of Discipline Hearing before the (DHO)" form. Id. at 60. Azzara requested to have a staff member represent him and did not wish to call witnesses. Id.

On July 30, 2009, Petitioner appeared for a hearing before DHO, K. Bittenbender. Id. at 45-47, DHO Report. During the DHO hearing, Petitioner was again read his rights, and he indicated that he understood them. Id. The DHO confirmed that Azzara received a copy of the incident report, and that a staff representative was appointed to represent Petitioner. Id.

The following statement was offered on Azzara's behalf:

Staff representative statement: Inmate AZZARA initially selected Ms. Nicklin as his Staff Representative, however, Ms. Nicklin was

the Acting Warden and reviewing CEO of this incident involving
AZZARA.  This conflict of interest prevented Ms. Nicklin from
being AZZARA's staff representative.  AZZARA was given an
opportunity to select another staff representative or have the
Warden appoint a staff representative.  AZZARA indicated he
didn't know who to select.  Acting Warden, Mr. Clemons, selected
Mr. Blanton as AZZARA's staff representative.  Mr. Blanton noted
no discrepancies in the discipline process.  AZZARA refused to
appear before the DHO for his hearing and Mr. Blanton remained
present throughout the hearing with AZZARA absent.  AZZARA's
refusal to appear before the DHO was documented.

Id.

In addition to the Incident Report and Investigation, the documentary

evidence which the DHO considered in making his determination included: (1)

Memoranda dated June 25, 2009, from Lieutenant R. Womeldorf; (2) Memorandum

dated June 25, 2009, from Senior Officer R. Arnold; (3) Memoranda dated June 25,

2009, from H.I.T. G. Fausey; and Memoranda dated June 25, 2009, from SIS

Technician J. DeWald.  The specific evidence taken from the relied upon

documentary evidence was as follows:

The specific evidence taken relied upon was as follows:

AZZARA's involvement in the incident as noted in Section 11 of
Incident Report 1885512, as provided by R. Womeldorf,
Lieutenant, was viewed as inculpatory in this case.  Paraphrased,
R. Womeldorf writes:  On the above date and time, this reporter
was attempting to assist staff restraining inmate AZZARA, P.,
#83640-054, due to him becoming combative and noncompliant to
staff orders.  While standing near AZZARA he looked at this

27

reporter and stated "Fuck You Womeldorf, you know I hate you, and I'm not going to be in prison forever, I'll fucking kill you." He then stated, "you think you are so smart, I'm going to get you, you'll fucking see." He stated this in the presence of Ms. Geona Fausey Health Services Tech., Mr. Laino, HSA, Officer J. Dewald, Officer R. Arnold.

Inculpatory evidence in the form of a memorandum from Officer Arnold dated 6/25/09, corroborated the evidence cited in the incident report in this case. Officer Arnold writes: On 6/25/09 while placing AZZARA in restraints, I witnessed AZZARA state to Lt. Womeldorf, "I hate you, I will kill you, I will not be locked up forever."

Inculpatory evidence in the form of a memorandum from Officer Fausey dated 6/25/09, corroborated the evidence cited in this report. Officer Fausey writes: On 6/25/09 I observed Mr. Laino run toward the scene at which time Mr. Laino and Officer Arnold attempted to escort AZZARA to SHU. AZZARA then dropped to his knees and left his body go limp, the inmate was non-compliant and refused to cooperate or move. AZZARA was yelling obscenities and threatening Lt. Womeldorf. He kept saying, "Fuck you and he was going to sue him, I fucking hate you, quit fucking touching me, get the fuck off of me, I will kill you, and I'm not here for life, I will get you, you will see."

Inculpatory evidence in the form of a memorandum from Officer DeWald dated 6/25/09, corroborated the evidence cited in this report. Officer DeWald writes: On 6/25/09 while assisting staff in control of Inmate AZZARA, I heard the inmate state, "Fuck you Womeldorf, I don't have a life sentence, I'll get you, you piece of shit, I'll fucking kill you."

The DHO believed the information provided by the staff members involved in this case, as they derived no known benefit by providing false information.

28

Upon questioning by the DHO, AZZARA, Registration #83640-054 neither admitted nor denied the charge(s).  He refused to appear before the DHO and no statement was made.

After the consideration of evidence listed in Sections III and V of this hearing report and documented above, the DHO has drawn the conclusion the greater weight of the evidence / some facts, listed in paragraphs two through five above, support(s) the finding Inmate AZZARA, Register No. 83640-054, committed the prohibited act(s) of Threatening Staff, Code(s) 203, on 06/26/2009, at or about 11:39 am, in Main Compound, Metal Detector Building sidewalk, FCI Allenwood, PA.

Id.  The DHO sanctioned Petitioner to disallowance of twenty-seven (27) days good

conduct time; thirty (30) days disciplinary segregation; forfeiture of fifty-eight (58)

days Non Vested Good Conduct Time; eighteen (18) month loss of TRULINCS,

phone and visitation privileges; and a disciplinary transfer.  Id.  The DHO

documented his reasons for the sanctions given as follows:

AZZARA's threatening statement directed at staff shows a great deal of disrespect for authority.  His behavior hampered the ability of the recipient of the threat to perform their duties in a appropriate manner.  Further, to verbally threaten another possibly indicates a propensity for violent acts.  Accordingly, Disciplinary Segregation, the Disallowance of Good Conduct Time and the Forfeiture of Non Vested Good Conduct Time is sanctioned to punish AZZARA for his misconduct while the Loss of Privileges (Phone, Visit and TRULINCS restriction) is sanctioned in an effort to deter him from this in the future.

The DHO is recommending a Disciplinary Transfer to meet AZZARA's greater need for supervision as well as to an institution

29

commensurate to his security needs.

Id. Azzara was advised of his appeal rights at the conclusion of the hearing. Id.

### Incident Report No. 1916840

On September 11, 2009, Petitioner was served with Incident Report No.

1916840 charging him with Refusing to Obey an Order of Any Staff Member, a

Code 307 violation. (Doc. 12-1 at 68, Incident Report). The incident report, which

was written by J. Rosario, Senior Officer, reads as follows:

> On September 10, 2009, at approximately 9:17 am, while
> conducting a mass shakedown on the B-200 range of the special
> housing unit and came to cell B212 where inmates AZZARA,
> #83640-054 and FALSO #13330-052 live, both inmates were
> asked to cuff up. Inmate FALSO #13330-52 at that time complied,
> but inmate AZZARA # 83640-054 refused. After asking him
> multiple times to submit to restraints, he refused to cuff up or to
> follow any orders at that point.

Id. On September 15, 2009, Petitioner appeared before the UDC. See id.,

Committee Action. Based on the severity of the prohibited act, the UDC referred

the charge to the DHO for final disposition, recommending appropriate sanctions.

Id. During the UDC hearing, staff member, Sweithelm, informed Azzara of his

rights at the DHO hearing and provided him with a copy of the "Inmate Rights at

Discipline Hearing" form. Id. at 71, Inmate Rights at Discipline Hearing.

Also on September 15, 2009, Azzara was provided with a "Notice of

Discipline Hearing before the (DHO)" form. (Id. at 72). Azzara requested to have a staff member represent him and did not wish to call witnesses. Id.

On October 1, 2009, Petitioner appeared for a hearing before DHO, K. Bittenbender. Id. at 63-65, DHO Report. During the DHO hearing, Petitioner was again read his rights, and he indicated that he understood them. Id. The DHO confirmed that Azzara received a copy of the incident report, and that a staff representative was appointed to represent Petitioner. Id.

The following statement was offered on Azzara's behalf:

> Staff representative statement: Staff Representative, Mr. DiFrancisco was appointed by the Warden and noted no discrepancies in the discipline process. Further, he met with AZZARA in advance of the hearing to discuss the case. Further, Inmate AZZARA declined to appear before the DHO. This was noted by his Staff Representative and all information regarding the hearing was conveyed to Mr. DiFrancisco.

Id.

No procedural issues were cited, and no documentary evidence was provided for consideration. Id.

The specific evidence taken relied upon was as follows:

> During this discipline hearing regarding AZZARA, Paul, Register No. 83640-054, for the charge of Refusing to Obey an Order of Any Staff Member, Code 307, the following information was evidentiary and documented by the DHO in his findings.

AZZARA's involvement in the incident as noted in Section 11 of Incident Report 1916840, as provided by J. Rosario, Senior Officer, was viewed as inculpatory in this case. Paraphrased, J. Rosario writes: On 9/10/09, at approximately 9:17 am, while conducting a mass shakedown on the B-200 range of the Special Housing Unit and came to cell B212 where inmates AZZARA, #83640-054 and FALSO #13330-052 live, both inmates were asked to cuff up. Inmate FALSO #13330-52 at that time complied, but inmate AZZARA # 83640-054 refused. After asking him multiple times to submit to restraints, he refused to cuff up or to follow any orders at that point.

The DHO believed the information provided by the staff members involved in this case, as they derived no known benefit by providing false information.

Upon questioning by the DHO, AZZARA, Paul, Registration #83640-054 neither admitted nor denied the charge. He refused to appear before the DHO and no statement was noted.

After the consideration of evidence listed in Sections III and V of this hearing report and documented above, the DHO has drawn the conclusion the greater weight of the evidence / some facts, listed in paragraph two above, support(s) the finding Inmate AZZARA, Paul, Register No. 83640-054, committed the prohibited act of Refusing to Obey an Order of Any Staff Member, Code 307, on 09/10/09, at or about 9:17 am, Special Housing Unit, at FCI Allenwood, PA.

Id. The DHO sanctioned Petitioner to disallowance of eighteen (18) days good conduct time; twenty-one (21) days disciplinary segregation; forfeiture of forty-three (43) days Non Vested Good Conduct Time; and personal property impounded for two (2) months. Id. The DHO documented his reasons for the sanctions given

32

as follows:

> AZZARA's refusal to obey the order of a staff member (2nd Code 307 Offense) limited the ability of that staff member to effectively perform their routine duties.  To allow inmates to engage in this type of behavior would create chaos and will not be tolerated in a correctional setting.  Accordingly, Disciplinary Segregation, the Disallowance of Good Conduct Time and the Forfeiture of Non Vested Good Conduct Time is sanctioned to punish AZZARA for his misconduct while the Impound of Personal Property is sanctioned in an effort to deter him from this behavior in the future.

Id.  Azzara  was advised of his appeal rights at the conclusion of the hearing.  Id.

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law.  Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002).  It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time.  Id.  As Petitioner's sanctions did include the loss of good conduct time, he has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison

which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

Azzara's disciplinary hearings were all held in 2009. The applicable Bureau of Prisons' inmate disciplinary procedures for this time frame are codified at 28 C.F.R. § 541, et seq., and entitled, Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process

34

requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to the 2009 regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.14. The incident is then referred to the UDC for an initial hearing pursuant to § 541.15. The UDC hearing is "ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident" and does not include the initial day staff learns of the incident, weekends or holidays. See 28 C.F.R. § 541.15(b). This period may be extended for good cause shown by either the inmate or staff. See 28 C.F.R. § 541.15 (k). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.15. "The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision." 28 C.F.R. § 541.17(g).

In the instant case it is clear that Azzara was afforded all of the required

procedural rights set forth in Wolff. He received timely notice of the incident reports. He was properly informed of his rights before each hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf.

Because Azzara was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decisions by the DHO. To the extent Azzara alleges the incident reports were falsified and there was not enough evidence to find he had committed the prohibited acts, the decision of the DHO is entitled to considerable deference by a reviewing court and the decision should be upheld if there is "some evidence" to support the decision. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court held that the "some evidence" standard applies in addressing a state prisoner's due process claim. Id. at 456-57; see Thompson v. Owens, 889 F.2d 500, 501- 02 (3d Cir. 1989).

The United States Court of Appeals for the Third Circuit observed that the standard found in 28 C.F.R. § 541.17(f) (1986) was more stringent than the "some evidence" standard. Henderson v. Carlson, 812 F.2d 874, 879 (3d Cir. 1987). The Court concluded that the "substantial evidence" standard in § 541.17(f) (1986) was

"clearly higher than any standard that the Constitution imposes on prison disciplinary proceedings." Id. In 2007, § 541.17(f) was amended and no longer includes the "substantial evidence" standard. 28 C.F.R. § 541.17(f) (2007). Section 541.17(f) (2007) now requires that a DHO's decision be based on "some facts;" and, if there is conflicting evidence, the decision is based on "the greater weight of the evidence." Id.

A DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. Rather, under Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. A disciplinary committee's resolution of factual disputes should is not subject to review where the standard in Hill is satisfied. Id.

In this case, the DHO documented in each misconduct hearing report, the specific evidence relied on to support the findings, namely, the written reports and memoranda of the Officers involved and witnesses, as well as Azzara's own verbal statements at the hearings. In accordance with Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. In this instance,

there is "some evidence" to support the decisions of the DHO.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541.13. Petitioner was found guilty of two (2) 200-level, high category prohibited acts and two (2) 300-level, moderate category prohibited acts.

Pursuant to 28 C.F.R. § 541.13, the following are the sanctions available for 200-level offenses:

A. Recommend parole date rescission or retardation.
B. Forfeit earned statutory good time or non-vested good conduct time up to 50%), or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1. Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C. Disciplinary Transfer (recommend)
D. Disciplinary segregation (up to 30 days).
E. Make monetary restitution.
F. Withhold statutory good time.
G. Loss of privileges: commissary, movies, recreation, etc.
H. Change housing (quarters).
I. Remove from program and/or group activity.
J. Loss of job.
K. Impound inmate's personal property.
L. Confiscate contraband.
M. Restrict to quarters.
N. Extra duty.

The following sanctions are available for 300-level offenses:

A.    Recommend parole date rescission or retardation.
B.    Forfeit earned statutory good time or non-vested good conduct time up to 25%), or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1.  Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C.    Disciplinary Transfer (recommend)
D.    Disciplinary segregation (up to 15 days).
E.    Make monetary restitution.
F.    Withhold statutory good time.
G.    Loss of privileges: commissary, movies, recreation, etc.
H.    Change housing (quarters).
I.    Remove from program and/or group activity.
J.    Loss of job.
K.    Impound inmate's personal property.
L.    Confiscate contraband.
M.    Restrict to quarters.
N.    Extra duty.

However, pursuant to 28 C.F.R. § 541.13(e) and Table 5 of § 541.13, the

DHO may impose the following increased sanctions for repeated Code 300-level

offenses committed within twelve (12) months:

1.    Disciplinary segregation, up to twenty-one (21) days;
2.    Forfeit statutory good conduct time or non-vested good conduct time up 37½ % percent or forty-five (45) days, whichever is less, and/or terminate or disallow earned good

conduct time.[3]

The DHO may also, under 28 C.F.R. § 541.13, Table 4, 1(b.1), go above the guideline range in disallowing good conduct time when there is a repetitive violation of the same prohibited act. Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied. A separate Order will be issued.

Dated:   May 23, 2014

United States District Judge

---

[3]The DHO imposed sanctions pursuant to this provision for Incident Report Number 1916840.

40